**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---

BROWN,

                    Plaintiffs,

        -against-

CITY OF NEW YORK ET AL.,

                    Defendants.

---

16-CV-1919 (ALC)

**OPINION AND ORDER**

---

**ANDREW L. CARTER, JR., United States District Judge:**

Plaintiffs Robert Brown ("Mr. Brown") and Marjorie Grodd-Brown ("Ms. Brown") (collectively, "Plaintiffs") bring this action under 42 U.S.C. § 1983[1] ("Section 1983") and the New York state and local law against Defendants the City of New York ("the City") and Detective Robert Cardona ("Cardona") (collectively, "Defendants"). Defendants have moved for summary judgment. In response, Plaintiffs have abandoned certain claims, but continue to pursue claims of false arrest, deprivation of due process rights, malicious prosecution, denial of the right to a fair trial, negligent training and screening, respondeat superior, First Amendment retaliation, and a violation of Mr. Brown's Fifth Amendment rights. For the reasons set forth in further detail below, summary judgment is warranted on each of these remaining claims. Defendants' motion is **GRANTED** in its entirety.

---

[1] "Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress, except that in any action brought against a judicial officer for an act or omission taken in such officer's judicial capacity, injunctive relief shall not be granted unless a declaratory decree was violated or declaratory relief was unavailable. For the purposes of this section, any Act of Congress applicable exclusively to the District of Columbia shall be considered to be a statute of the District of Columbia."

**BACKGROUND**

### I.     Factual Background

The following factual allegations are undisputed by the parties unless otherwise noted.[2] On February 28, 2015, Mr. Brown and E.B., his then-12 year-old daughter, got into an argument over how long E.B. had been in the bathroom.  Defendants' Statement of Undisputed Facts Pursuant to Local Civil Rule 56.1 ("Defs' 56.1") ¶ 3 (ECF No. 61).  During the argument, E.B. called her father a jerk.  *Id.* ¶ 4.  Mr. Brown then "pinched [E.B.] with a twisting motion." *Id.* ¶ 5.

On March 2, 2015, school officials at E.B.'s school noticed a mark on her arm.  *Id.* ¶ 6. After observing the mark, a school official made a report to the New York State Office of Children and Family Services ("NYSOCFS") of suspected child abuse or maltreatment.  *Id.* ¶ 7.  The school official noted in the Suspected Child Abuse Report that E.B. had lacerations/bruises/welts, and had further informed the school official that, on February 28, 2015, E.B.'s father had pinched her with a twisting motion causing a bruise.  *Id.* ¶¶ 8-9.  The Suspected Child Abuse Report further detailed that E.B. told the school official that she frequently gets into verbal arguments with her father, that they can be physical at times, and that she had "done worse to her father" including punching and hitting him, "jump[ing] on his back[,]" and "go[ing] for his neck."  *Id.* ¶ 10; *see* Declaration of Evan Brustein in Support of Motion for Summary Judgment ("Brustein Decl."), Ex. B (ECF No. 66); *see also* Order Granting Motion to Seal (ECF No. 58) (filing Suspected Child Abuse Report under seal).

---

[2] As set forth in the section that follows, each party argues that the other has not properly responded to its Rule 56.1 Statement for the purposes of this motion. Those objections are addressed *infra*, Part III, unless the objection has been overruled or the evidentiary material deemed irrelevant for the purposes of deciding this motion.

A child abuse case was then referred to the New York City Police Department ("NYPD") for investigation. Defs' 56.1 ¶ 11. The form used to refer the matter to the NYPD indicated that "the caretaker caused serious physical harm to child or has made a plausible threat of serious harm." *Id.* ¶ 12. The form, dated March 3, 2015, further described that E.B. attended a school specializing in serving children with "learning differences" and that there was a history of E.B. attacking her parents. Brustein Decl., Ex. C at DEF056. Also specified was that, during the altercation at issue, E.B. had "physically attacked" and "pinched" her father and, "[i]n an attempt to teach [E.B.] that what she does is not appropriate, [her] father pinched her in return, applying excess force and leaving a bruise." Defs' 56.1 ¶ 13; Brustein Decl., Ex. C at DEF056. However, the reporter indicated that Mr. Brown had no intention of injuring E.B., and that E.B. was "likely not at serious risk from her parents." *Id.*

On March 11, 2015, Mr. Brown received a phone call from an unidentified individual requesting to speak to his wife. Declaration of Vik Pawar, Esq., Ex. 2 ("R. Brown Depo.") at 21:8-10 (ECF No. 70-2).[3] After Mr. Brown indicated his wife was not there, the individual asked if he was Robert Brown, and Mr. Brown confirmed it was him. *Id.* at 21:11-13. The individual then said to Brown, "I need you to come down to the police station." *Id.* at 21:13-14. Brown then hung up the phone, not believing that the individual was a police officer. *Id.* at 21:14, 59:12-13, 60:7-11.

---

[3] Certain cited excerpts of Mr. Brown's deposition are appended to the Brustein Declaration at Exhibit E.

Approximately thirty minutes later, at 5:09 p.m., Cardona appeared at the Browns' residence, located at 55 West 14th Street, Apartment 7C, New York, New York, in a suit and tie, and "bang[ed]" on the door, and identified himself as an NYPD officer. *Id.* at 60:22-24, 61:7-13; Defs' 56.1 ¶ 16.[4] Mr. Brown looked out his peephole, saw Cardona, and asked "who is it." R. Brown Depo. at 61:14-24. After Cardona did not answer him, he called 9-1-1 because he was afraid to open the door. R. Brown Depo. at 61:25-62:3, 65:22-23; Defs' 56.1 ¶ 17. According to the 9-1-1 operator's event chronology, Brown reported that a male wearing a suit and tie was at the door of his apartment, and was identifying himself as an NYPD officer with Shield Number 7724. *Id.* ¶ 18. The 9-1-1 operator told Brown not to let the man inside if Brown did not know who he was. R. Brown Depo. at 62:4-7.

At approximately 5:17 p.m., Cardona called 9-1-1 to request a unit because the occupant was requesting verification that he was a police officer. Defs' 56.1 ¶ 19. At approximately 5:22 p.m., the 9-1-1 operator heard Cardona identifying himself to the occupant. *Id.* ¶ 20. Approximately ten minutes after Mr. Brown called 9-1-1, two uniformed police officers came out of the elevator on the Browns' floor. R. Brown Depo. at 62:16-24. Cardona took out what appeared to be identification from his coat pocket and showed it to the officers, to which the police officers seemed to smile, as if they knew him. *Id.* The officers turned around and went back downstairs. *Id.*

---

[4] Brown claimed at his deposition that Cardona never identified himself as a police officer. R. Brown Depo. 62:8-10; 64:5-11.

After the officers left, Mr. Brown felt less afraid, and was "confident enough . . . that [Cardona] was with the police department . . . to open the door and let him in . . . since the officers knew who he was." *Id.* at 63:14-20, 64:17-21, 65:22-66:1. When Brown opened the door, Cardona said, "I need for you to come down to the police station now." *Id.* at 65:5-7. Cardona came into the apartment and said, while near the front door, "I need for you [to] come down to the police station." *Id.* at 65:11-14; Defs' 56.1 ¶ 25. Brown refused, to which Cardona responded, ". . . I am going to arrest you right here and put the cuffs [on] you and take you down right in front of your family." *Id.* ¶¶ 26-27; R. Brown Depo. at 68:16-21. Cardona was in the apartment for approximately ten minutes. Defs' 56.1 ¶ 23.

Brown rode in the front seat of Cardona's car to the police station. *Id.* ¶ 28. It took approximately 10 to 15 minutes to get there. *Id.* ¶ 29. At no point prior to arriving at the police station was Brown in handcuffs. *Id.* ¶ 30. When Brown asked why they were going to the police station, Cardona told him, "I can't say anything to you until we get down to the police station." *Id.* ¶ 31.

At approximately 6:00 p.m. at the police station, Cardona provided Brown with a copy of *Miranda* Warnings. *Id.* ¶ 32. Brown initialed next to the word "yes" in response to questions relating to his understand of each of his *Miranda* rights, and also answered he was willing to answer questions. *Id.* ¶¶ 34-39. Brown also signed and printed his name on the *Miranda* warnings sheet. *Id.* ¶ 40. Brown could not recall whether Cardona said anything else to him when he received this paper, nor could he remember whether Cardona gave the document to him prior to the handwritten statement that he would ultimately give. R. Brown Depo. 88:25-89:5.

Cardona then "threw a piece of paper down in front of [Brown] and forced [him] to write a statement." R. Brown Depo. 78:2-4. Specifically, Cardona said to Brown, "[w]rite down the statement about what happened," and also read Mr. Brown "the charges of why [he] was being brought down to the police station." *Id.* ¶ 41. Cardona did not tell Brown what to write. *Id.* ¶ 42. However, Brown "felt threatened like there was a gun to [his] head" because of the way Cardona threw down the piece of paper and said "[p]ut down what happened." R. Brown Depo. 79:3-6, 80:11-17. Cardona made no other threats at that time. *Id.* at 80:18-20.

Mr. Brown then wrote, in his own words, an accurate account of what had happened. Defs' 56.1 ¶ 43. Specifically, Brown wrote that he asked his daughter E.B. to hurry up in the bathroom because he needed to use it and she called him a jerk. *Id.* ¶ 44. Brown also wrote that his daughter started making hissing sounds and scratching and pinching him. *Id.* ¶ 45. Then, he wrote, he told his daughter, "Ok you want to play the pinching game?" and pinched her arm a little while she pinched him back. *Id.* ¶ 46. One of his pinches was a little too hard, he continued, causing a black and blue mark the size of a quarter. *Id.* ¶ 47.

Cardona interviewed Ms. Brown and E.B. at the precinct, separately from Mr. Brown. Brustein Decl., Ex. H ("Grodd-Brown Depo.") at 40:17-24.[5] Cardona told them that Mr. Brown was "in big trouble" and asked them to answer his questions. *Id.* at 41:2-5. When Cardona asked E.B. about the incident, E.B. told him that her father had pinched her and caused a bruise, but made light of it, indicating that they were playing and that it was "no big deal." Defs' 56.1 ¶ 49; Grodd-Brown Depo. at 41:8-11, 42:7-13. Ms. Brown did not know if her daughter spoke to Cardona at the apartment on March 11, 2015. Defs' 56.1 ¶ 24.

---

[5] Certain excerpts of Ms. Brown's deposition are appended to the Pawar Declaration at Exhibit 3.

At approximately 8 p.m., Cardona arrested Mr. Brown on charges of endangering the welfare of a child and assault in the third degree. *Id.* ¶ 50. Brown agrees that the narrative portion of the arrest report that he "did cause injury to a twelve year old child by pinching her on her upper right arm. Causing a quarter size bruise" was true. *Id.* ¶ 51. On March 12, 2015, the New York County District Attorney's Office charged Brown with intentional assault in the third degree, reckless assault in the third degree, endangering the welfare of a child, attempted assault in the third degree, and harassment in the second degree. *Id.* ¶ 52. The criminal complaint, signed by Cardona, charges as follows:

> On or about March 2, 2015 at about 12:25 P.M., at the times and places described below in the County and State of New York, the defendant, with intent to cause physical injury to another person, caused such injury to another person; the defendant recklessly caused physical injury to another person; the defendant knowingly acted in a manner likely to be injurious to the physical, mental, and moral welfare of a child less than seventeen years old; the defendant, with intent to cause physical injury to another person, attempted to cause such injury to another person; the defendant, with intent to harass, annoy and alarm another, subjected that person to physical contact and attempted and threatened to do the same.

Brustein Decl., Ex. J (Criminal Complaint) (ECF No. 66-8).

The factual basis underlying those allegations is that E.B. informed Cardona that she "observed [Brown] pinch her right upper arm, causing bruising and substantial pain." *Id.* Brown has indicated that he does not believe that Cardona lied about the facts and circumstances underlying the arrest, but that Cardona "made up the charges." Defs' 56.1 ¶ 54.

On March 12, 2015, during Brown's arraignment, the Honorable Stephen Statsinger offered to give a shorter date to return to court, but Brown's attorney requested April 23, 2015. *Id.* ¶ 55. Brown was released on his own recognizance. Brustein Decl., Ex. K (arraignment transcript). The Court issued a temporary order of protection for Brown to stay away from his daughter, but gave the Family Court the ability to modify the conditions of the order, after Brown's attorney requested it. Defs' 56.1 ¶ 56. Plaintiff made no effort to modify the order of protection in Family Court. *Id.* ¶ 57. On April 23, 2015, the criminal charges were dismissed because the People could not prove the case beyond a reasonable doubt. *Id.* ¶ 58.

## II.    Procedural History

Plaintiffs filed this action on March 15, 2016, on behalf of themselves and E.B. Defs' 56.1 ¶ 1. On August 7, 2017, Plaintiffs filed a Second Amended Complaint withdrawing E.B.'s claims. Defs' 56.1 ¶ 2. That complaint includes claims for: (1) false arrest – unlawful seizure; (2) deprivation of due process rights; (3) malicious prosecution; (4) denial of the right to fair trial; (5) violations of New York State and New York City Human and Civil Rights laws; (6) negligent screening, training, hiring, and retention; (7) negligence; (8) respondeat superior; (9) malicious abuse of process; (10) intentional and negligent infliction of emotional distress; (11) First Amendment retaliation; and (12) violation of Mr. Brown's Fifth Amendment rights. Second Amended Complaint (ECF No. 53). On September 26, 2017, Defendants moved for summary judgment. Motion for Summary Judgment (ECF No. 59).

Plaintiffs' opposition brief indicates that they only maintain the following causes of action, withdrawing all others: (1) false arrest on behalf of Mr. Brown; (2) deprivation of due process rights on behalf of Mr. and Ms. Brown; (3) malicious prosecution on behalf of Mr. Brown; (4) denial of the right to fair trial on behalf of Mr. Brown; (5) negligent screening, training, hiring,

and retention on behalf of Mr. and Ms. Brown; (6) respondeat superior on behalf of Mr. and Ms. Brown; (7) First Amendment retaliation on behalf of Mr. Brown; and (8) violation of Mr. Brown's Fifth Amendment rights on behalf of Mr. Brown.[6]

### III.    The Parties' Rule 56.1 Statements

Each party claims that the other has not properly responded to its Rule 56.1 Statement for the purposes of this motion. These contentions are addressed in turn.

Rule 56.1 of the Local Rules of this Court govern the procedures for summary judgment motions. This rule requires a moving party to submit "a separate, short and concise statement" setting forth material facts as to which "there is no genuine issue to be tried." Local Rule 56.1(a). An opposing party must respond to the moving party's 56.1 statement, articulating, if necessary, additional material facts as to which a triable issue remains. Local Rule 56.1(b). The material facts reflected in a moving party's 56.1 statement "will be deemed to be admitted unless controverted" by the opposing party's statement. Local Rule 56.1(c). "Each statement by the movant or opponent pursuant to Rule 56.1(a) and (b), including each statement controverting any statement of material fact, must be followed by citation to evidence which would be admissible, set forth as required by Fed. R. Civ. P. 56(c)."[7] Local Rule 56.1(d).

First, Plaintiffs have failed to respond to paragraphs 1-6, 17-24, 27-30, 48-50, 52, and 55-59 of Defendants' 56.1 Statement. As such, where Defendants' unopposed factual averments are supported by citations to admissible evidence, the Court accepts them as true. *Holtz v. Rockefeller*

---

[6] For the purpose of simplicity in the analysis that follows, when discussing a given claim, the Court refers to them as advanced by both Plaintiffs even if the claim is only advanced by one of them.

[7] Fed. R. Civ. P. 56(c) provides examples of the types of evidence that may support a genuine dispute of material fact, that a party may object to certain evidence as inadmissible, that a court may, in its discretion, consider other materials in the record beyond those cited, and that affidavits and declarations in support "must be made on personal knowledge," provide admissible evidence, and demonstrate "competen[ce] to testify on the matters stated."

& Co., 258 F.3d 62, 73 (2d Cir. 2001). However, the Court will exercise its discretion to overlook Plaintiffs' non-responses and comb the record as is necessary to adjudicate this motion. *Id.*

In addition, the Court deems paragraphs 7 through 13 admitted because Plaintiffs have not cited record evidence to dispute these facts. Plaintiff objects to paragraphs 7-10 as inadmissible hearsay. However, the document cited as supporting these facts, the NYSOCFS Report of Suspected Child Abuse or Maltreatment ("Suspected Child Abuse Report") is admissible as a business record through the testimony of an official at E.B.'s school "because the report appears to have been prepared at or near the time of the events, by . . . a person with knowledge." *Gold v. Am. Med. Alert Corp.*, No. 14-CV-5485 (JFK), 2017 WL 663551, at *4 (S.D.N.Y. Feb. 16, 2017) (citing Fed. R. Evid. 803(6)). Similarly, Plaintiffs' hearsay objection to paragraphs 11-13 is overruled, as the document cited in support of those facts, the New York County District Attorney's Office Child Abuse United Police Referral Form ("Police Referral"), is admissible as a business record. *Id.* Moreover, the statements reflected at paragraphs 11-13 are not being admitted for their truth, but to show that the statements were provided to the New York City Police Department and Detective Cardona. *Richards v. City of New York*, No. 97-CV-7990 (MBM), 2003 WL 21036365, at *6 (S.D.N.Y. May 7, 2003) (reasoning that statements reflected in police report are not hearsay where used to demonstrate statements were made to officers so as to provide probable cause to arrest).

The Court further deems paragraphs 32-47, 51, 53, and 54 of Defendants' 56.1 Statement admitted, as Plaintiffs' response contains improper legal argument and, while broadly invoking deposition transcripts in response, does not cite to specific pages and lines of those transcripts. *See, e.g., Costello v. N.Y. State Nurses Ass'n*, 783 F. Supp. 2d 656, 661 n.5 (S.D.N.Y. 2011) (disregarding a plaintiff's responses to a defendant's Rule 56.1 Statement where the plaintiff

responded with conclusory assertions or legal arguments); *see also, e.g., Kastle v. Tompkins*, No. 13-CV-2256 (VB)(PED), 2017 WL 9534741, at *2 (S.D.N.Y. Mar. 13, 2017) (declining to consider citations to transcripts without specific pages or line numbers) (citations omitted), *report and recommendation adopted in part, rejected in part on other grounds*, No. 13-CV-2256 (VB), 2017 WL 3206341 (S.D.N.Y. July 27, 2017). Nonetheless, the Court has considered admissible evidence in the record for which Plaintiff has provided citations.

The Court declines to consider all but paragraphs 9-11 of Plaintiffs' Counter-Statement of Facts Pursuant to Rule 56.1, as it contains no record citations, except for a reference to the Second Amended Complaint and the "testimonies of the plaintiffs." As an initial matter, a complaint is inadmissible hearsay and cannot be properly cited for the truth of its contents in a 56.1 Statement. *E.g., Edelhertz v. City of Middletown*, 943 F. Supp. 2d 388, 391 n.2 (S.D.N.Y. 2012), *aff'd sub nom. Edelhertz v. City of Middletown, N.Y.*, 714 F.3d 749 (2d Cir. 2013).

Plaintiffs nonetheless argue that because Defendants have failed to respond to their 56.1 Statement, the facts contained therein should be deemed admitted. Pls' 6/11/18 Letter at 1. The Court rejects Plaintiffs' invitation, as Defendants cannot be expected to respond to a 56.1 Statement devoid of record citations. Accordingly, in deciding this motion, the Court has considered the affidavits and documents submitted by both parties but has not relied on the portions of Plaintiffs' Rule 56.1 Statement that are unsupported. *IBS Ketel, Ltd. v. Korea Telecom Am., Inc.*, No. 98-CV-4856 (DC), 2000 WL 821013, at *1 (S.D.N.Y. June 22, 2000).

## STANDARD OF REVIEW

A party moving for summary judgment has the burden of establishing that there exists no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *Scott v. Harris*, 550 U.S. 372, 380 (2007); *Ford v. Reynolds*, 316 F.3d 351, 354

(2d Cir. 2003). Material facts are those that may affect the outcome of the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). An issue of fact is considered "genuine" when a reasonable finder of fact could render a verdict in favor of the nonmoving party. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) ("Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial.") (internal quotation marks omitted).

In deciding a summary judgment motion, "the court's responsibility is not to resolve disputed issues of fact but to assess whether there are any factual issues to be tried, while resolving ambiguities and drawing reasonable inferences against the moving party." *Knight v. U.S. Fire Ins. Co.*, 804 F.2d 9, 11 (2d Cir. 1986). If the court recognizes any genuine issue of material fact, summary judgment is improper, and the motion must be denied. *Eastway Constr. Corp. v. City of New York*, 762 F.2d 243, 249 (2d Cir. 1985).

If the moving party discharges its burden of proof, the non-moving party must then set forth specific facts showing that there is a genuine issue for trial. *See* Fed. R. Civ. P. 56(c). The non-moving party opposing a properly supported summary judgment motion "may not rest upon mere allegation[s] or denials of his pleading." *Anderson*, 477 U.S. at 256. Indeed, "the mere existence of *some* alleged factual dispute between the parties" alone will not defeat a properly supported motion for summary judgment, and "[i]f the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Id.* at 247-50 (emphasis in original) (internal citations omitted). Rather, enough evidence must favor the non-moving party's case such that a jury could return a verdict in its favor. *See Gallo v. Prudential Residential Servs., Ltd.*, 22 F.3d 1219, 1224 (2d Cir. 1994) ("When no rational jury could find in favor of the nonmoving party

because the evidence to support its case is so slight, there is no genuine issue of material fact and a grant of summary judgment is proper.").

**DISCUSSION**

## I. False Arrest

### A. Probable Cause

"A § 1983 claim for false arrest, resting on the Fourth Amendment right of an individual to be free from unreasonable seizures, including arrest without probable cause, is substantially the same as a claim for false arrest under New York law." *Weyant v. Okst*, 101 F.3d 845, 852 (2d Cir. 1996) (citation omitted). Probable cause is a complete defense to false arrest. *Id.* It "exists when the authorities have knowledge or reasonably trustworthy information sufficient to warrant a person of reasonable caution in the belief that an offense has been committed by the person to be arrested." *Lennon v. Miller*, 66 F.3d 416, 424 (2d Cir. 1995). Probable cause does not require an actual showing of guilt. *Illinois v. Gates*, 462 U.S. 213, 243 n.13. Otherwise innocent behavior, under certain circumstances, can contribute to a finding that probable cause exists; thus, "the relevant inquiry is not whether particular conduct is 'innocent' or 'guilty,' but the degree of suspicion that attaches to particular types of non-criminal acts." *Id.*

In addition, probable cause may be based solely on information received from an alleged victim or eyewitness, so long as there is no reason to doubt that person's veracity. *Weiner v. McKeefery*, 90 F. Supp. 3d 17, 30 (E.D.N.Y. 2015) (quoting *Betts v. Shearman*, 751 F.3d 78, 81 (2d Cir. 2014)) (dismissing false arrest claim upon finding of probable cause to arrest Plaintiff for endangering the welfare of a child based solely upon statements by Plaintiff's children describing Plaintiff throwing child against wall of car, despite Plaintiff's claims of failure to investigate); *Slater v. Mackey*, No. 12-CV-4325 (NGG)(RML), 2015 WL 6971793, at *12 (E.D.N.Y. Nov. 10,

2015) (dismissing false arrest claim upon finding of probable cause to arrest Plaintiff for assault on her child resulting in black eye and bruises to child based upon statement by Plaintiff's child, combined with corroborating evidence).

Construing the evidence presented in the light most favorable to the non-moving party, as the Court must, there are no genuine issues of fact determinative of the question of whether there was probable cause to arrest Mr. Brown. Assuming for the sake of argument that an arrest occurred when Cardona first arrived at his apartment (as opposed to later at the precinct following Mr. Brown's confession),[8] it is undisputed that, at that time, Cardona was aware that a school official–a complaining witness–had filed a report of suspected child abuse with NYSOCFS, which was thereafter referred to the NYPD, noting that E.B. had lacerations/bruises/welts as a result of her father pinching her. This establishes probable cause to arrest Mr. Brown for assault in the third degree, among other things. *See, e.g., Peterson-Hagendorf v. City of New York*, 146 F. Supp. 3d 483, 485-87 & nn.2-6 (E.D.N.Y. 2015) (dismissing false arrest claim at summary judgment upon finding of probable cause to arrest teacher for assault and/or endangering the welfare of a child, as based upon principal having observed welt on student's neck, as well as interviews of child by several individuals which consistently described teacher's pinching of child's neck).

---

[8] Either an arrest or detention "supported by less than probable cause may be actionable under § 1983, provided the 'seizure' in question is 'unreasonable.'" *Posr v. Doherty*, 944 F.2d 91, 98 (citation omitted). However, where, as here, Plaintiffs have alleged both false arrest and unreasonable seizure (Second Amended Complaint at ¶¶ 35-38), the Court must determine when and whether the seizure - whether an investigatory detention or an actual arrest - occurred based on the totality of the circumstances, and whether that seizure was reasonable. *Id.* However, here, it is unnecessary for the Court to determine whether Brown was, in fact, seized at this apartment, because Cardona had probable cause to arrest Mr. Brown in either instance, and most certainly after Mr. Brown admitted to Cardona that he pinched his daughter, which corroborated the other accounts obtained by Cardona. *See, e.g., People v. Morales*, 939 N.Y.S.2d 824, 828 (Kings Cty. Crim. Ct. 2012) (concluding that reasonable cause existed for purposes of sufficiency of accusatory instrument charging father with third-degree assault, endangering the welfare of a child, attempted third-degree assault, and third-degree menacing where child's mother observed bruises and welts to buttocks and thighs after child returned home from weekend with father, officer observed marks on child, and father admitted to striking child).

That the Browns or E.B. may have later minimized the pinch as playful "does not preclude a finding that [Cardona] had probable cause" to arrest Mr. Brown, especially in the absence of any reason to doubt the credibility of the unequivocal accounts regarding the interaction and E.B.'s injury. *See, e.g., Thomas v. Culberg*, 741 F. Supp. 77, 80 (S.D.N.Y. 1990) (concluding that, while child's denial of father's abuse in the face of officer's own observations of child's scrapes and bruises and father's admission that holding son over trash can was a "joke" did not mitigate officer's probable cause, father's account that eyewitnesses were "crazy" and that "call was a prank" warranted denial of summary judgment on probable cause, but grant of summary judgment on arguable probable cause).

Thus, because Cardona had probable cause to arrest Mr. Brown, Plaintiffs' false arrest claim is dismissed.[9]

## B. *Payton* Claim

Plaintiffs appear to alternatively suggest that a warrant was necessary to arrest Mr. Brown in his home, given that exigent circumstances were lacking in light of the nine-day delay between the report and the arrest. *See* Plaintiffs' Memorandum of Law in Opposition to Summary Judgment ("Pls' Mem.") at 12 (citing *Payton v. New York*, 445 U.S. 573, 602-03 (1980)) (ECF No. 71); *see also* Sur-reply Letter dated June 11, 2018 ("Pls' 6/11/18 Letter") at 1 (ECF No. 75) (arguing that Cardona should have obtained an arrest warrant).

Assuming for the sake of argument that Mr. Brown was arrested in his home, as opposed to later on at the precinct, *supra* n.8, Plaintiffs are correct that a warrantless arrest that occurs inside an individual's home, absent exigent circumstances or consent, can form the basis of a false arrest

---

[9] Moreover, even if probable cause were lacking, Cardona most certainly had arguable probable cause to arrest Mr. Brown in light of the "potentially volatile" nature of familial disputes, and thus would be entitled to qualified immunity. *Weiner*, 90 F. Supp. 3d at 39 (alternatively finding qualified immunity on false arrest claim involving child's allegation that father threw him against side of car) (internal citations and quotation marks omitted).

claim under 42 U.S.C. § 1983 even if probable cause is present. *Durney v. City of New York*, No. 91-CV-3959 (JG), 1996 WL 1057148, at \*7 (E.D.N.Y. Oct. 25, 1996) (citations omitted). However, Plaintiffs, despite being represented by counsel, have neither pleaded this theory, nor, with but a single cite to *Payton* in their opposition papers, developed this claim "in any meaningful way." *Morris v. Silvestre*, 604 F. App'x 22, 26 (2d Cir. 2015) (affirming summary judgment dismissal of false arrest claim grounded in *Payton* because "single citation to *Payton* . . . [was] wholly inadequate for a party with counsel to present a *Payton* claim.").

Even putting those deficiencies aside, and resolving ambiguities in Plaintiffs' favor, based on the limited record before the Court, any *Payton* claim advanced by Plaintiffs fails on its merits. Here, Cardona called and asked Mr. Brown to come down to the police precinct, but did not identify himself. Cardona then came to Plaintiffs' apartment door but did not identify himself, so Mr. Brown, afraid, called 9-1-1. Mr. Brown then observed through his peephole two uniformed officers come to his door, and Cardona presenting them with identification. Mr. Brown then opened his front door and Cardona entered.

Second Circuit law is unsettled as to whether a plaintiff's mere opening of a door in response to an officer's knock allows for a warrantless arrest in the home. *Parker-El v. Morales*, No. 13-CV-6996 (RWS), 2015 WL 5920031, at \*4 (S.D.N.Y. Oct. 9, 2015) (surveying cases). However, even assuming that Mr. Brown's decision to *open his door* was involuntary, Mr. Brown consented to Cardona's *entry* when he "felt confident enough [that Cardona was a police officer] to open the door and *let him in*[,]" after which Mr. Brown was arrested. *See* R. Brown Depo. at 64:17-22 (emphasis added); *see id.* at 63:19-20 ("I felt confident enough since the officers knew who he was, that is why I opened the door."); *see also id.* at 65:22-66:1 (attesting that he was less afraid to open the door after the uniformed police officers left). Considering the totality of the

circumstances, any coercive effect that Cardona's failing to identify himself and persistent attempts to speak with Mr. Brown might have had was substantially mitigated after the uniformed officers arrived and Mr. Brown felt confident enough to let Cardona into his apartment. *See United States v. Real Prop. & Premises Known as 90-23 201st St., Hollis, New York*, 775 F. Supp. 2d 545, 556-57 (E.D.N.Y. 2011) (to evaluate the voluntariness of consent, court must consider totality of the circumstances, including whether officers used force or intimidating tactics, or whether attempted entry was at late hour).

Thus, even had Plaintiffs properly advanced a *Payton* claim, Mr. Brown's own testimony establishes consent, thus precluding such a claim.

## II. Malicious Prosecution

To prove a cause of action for malicious prosecution under Section 1983, a plaintiff must show that: (1) the defendant commenced a prosecution against the plaintiff, (2) there was no probable cause to believe the prosecution could succeed, (3) the defendant behaved with malice, (4) the prosecution ended in the plaintiff's favor, and (5) there was "a sufficient post-arraignment liberty restraint to implicate the plaintiff's Fourth Amendment rights." *Rohman v. N.Y.C. Transit Auth.*, 215 F.3d 208, 215 (2d Cir. 2000). Under state law, the fifth element described in *Rohman* is not required. *Russell v. Smith*, 68 F.3d 33, 36 (2d Cir. 1995).

"[T]he existence of probable cause is a complete defense to a claim of malicious prosecution in New York . . . ." *Manganiello v. City of New York*, 612 F.3d 149, 161-62 (2d Cir. 2010) (internal citations and quotation marks omitted). "If probable cause existed at the time of arrest, it continues to exist at the time of prosecution unless undermined by the discovery of some intervening fact." *Johnson v. Constantellis*, 221 F. App'x 48, 50 (2d Cir. 2007) (internal citations and quotation marks omitted).

Here, as discussed above, *supra* Point B, there was probable cause to arrest Mr. Brown. Plaintiffs cite no intervening facts undermining Cardona's probable cause.

In addition, Plaintiffs cannot establish that Cardona initiated the prosecution with malice. "To initiate a prosecution, a defendant must do more than report the crime or give testimony." *Manganiello*, 612 F.3d at 163. Rather, an "active role in the prosecution, such as giving advice and encouragement or importuning the authorities to act[,]" is necessary. *Id.* (quoting *Rohman*, 215 F.3d at 217) (internal quotation marks omitted). That the district attorney assigned to the case exercised independent judgment in initiating the prosecution is presumed, and typically rebutted only by evidence that the defendants "misled or pressured" that official. *Salim v. City of New York*, No. 15-CV-8521 (CM), 2017 WL 946345, at *2 (S.D.N.Y. Feb. 28, 2017) (quoting *Alcantara v. City of New York*, 646 F. Supp. 2d 449, 458-59 (S.D.N.Y. 2009)) (internal quotation marks omitted).

The dearth of evidence that Cardona initiated this prosecution with malice is readily apparent from the record and the supporting briefs. Brown does not dispute that the substance of the complaint (*i.e.*, that he pinched his daughter, causing a quarter-sized bruise) is true. Moreover, Plaintiffs do not assert facts suggesting that Cardona played any more of a role in the short prosecution than signing the criminal complaint. Indeed, the only arguments that Plaintiff musters are that "[a] lack of probable cause generally creates an inference of malice[,]" along with a few highly conjectural hypotheticals. Pls' Mem. at 14-15 (quoting *Manganiello*, 612 F.3d at 162).[10]

---

[10] Plaintiffs complain that they never had an opportunity to conduct discovery to substantiate this claim (*e.g.*, the deposition of Cardona). *See* Pl's Mem. at 5, 14. However, the Court allowed the "parties" to conduct limited discovery in this case from September 21, 2016, to March 3, 2017. Order (ECF No. 17). Despite serving written discovery, it appears that Plaintiffs chose not to take Cardona's deposition, despite Defendants offering to produce him. Letter dated August 28, 2017 (ECF No. 54). Plaintiffs did not move to compel Cardona's deposition. Thus, to the extent that Plaintiffs seek further discovery on this point, that request is denied. *See, e.g., Harris v. Computer Assocs. Int'l, Inc.*, 204 F.R.D. 44, 45 (E.D.N.Y. 2001) (denying request for further discovery where party had ample opportunity to depose witnesses and move to compel prior to close of discovery and summary judgment motion and could only "speculate[] as to what evidence would be produced upon further discovery").

Because, as discussed at length above, Defendants have conclusively demonstrated probable cause, Plaintiffs' arguments are unavailing. They have failed to demonstrate a triable issue as to whether Cardona initiated the prosecution with malice.

For these two independent reasons, Plaintiffs' malicious prosecution claim fails.

## III. Fair Trial

A claim that an official fabricated evidence in violation of a plaintiff's right to a fair trial requires that a plaintiff show that "an (1) investigating official (2) fabricates evidence (3) that is likely to influence a jury's decision, (4) forwards that information to prosecutors and (5) the plaintiff suffers a deprivation of liberty as a result." *Jovanovic v. City of New York*, 486 F. App'x 149, 152 (2d Cir. 2012).

In response to Defendants' contention that Cardona fabricated no evidence whatsoever, Plaintiff takes no issue with Cardona's description of the underlying facts, but rather with Cardona's characterization of the pinch in two statements in the criminal complaint: first, that the pinch resulted in "substantial pain" to E.B., and, second, that the pinch occurred on March 2, 2015, when it in fact occurred on February 28, 2015. Pl's Mem. at 17-18.

Defendants argue that statements in a criminal complaint are inadmissible hearsay and therefore unlikely to reach a jury, as is necessary to establish a denial of a right to fair trial claim. Defendants' Reply Memorandum of Law in Support of Motion for Summary Judgment at 6 (citing, *inter alia*, *Ricciuti v. N.Y.C. Transit Auth.*, 124 F.3d 123, 130 (2d Cir. 1997)) (ECF No. 72). However, courts in this Circuit, for the most part, have allowed such claims to proceed on the basis that the "likely to influence a jury's decision" element "refers to the materiality of the information, not its likelihood to be presented to a jury." *E.g.*, *Bryant v. Serebrenik*, No. 15-CV-3762

(ARR)(CLP), 2016 WL 6426372, at *6 (E.D.N.Y. Oct. 28, 2016) (distinguishing *Ricciuti* and surveying cases).

Therein, however, lies the most major defect of the fabrications that Plaintiff asserts: they are wholly immaterial. A court considering the materiality of a given piece of evidence should consider the admissibility of such evidence at trial, as well as "whether the false statements are entitled to absolute immunity, and whether these statements laid the groundwork for plaintiff's deprivation of liberty[.]" *Buie v. City of New York*, No. 12-CV-4390 (RJD)(CLP), 2015 WL 6620230, at *10 (E.D.N.Y. Oct. 30, 2015) (internal quotation marks and citations omitted).

First, the two-day discrepancy between the date of the actual incident and the date reflected in the criminal complaint is as immaterial of a fabrication as they come. *See, e.g.*, *Bryant*, 2016 WL 6426372, at *6 (denying summary judgment to defendants on fair trial claim because factual discrepancies underlying probable cause determination were material to jury's assessment of probable cause to arrest for disorderly conduct). The Court cannot discern a reason for fabricating this information, nor do Plaintiffs suggest one (*see* Pls' 6/11/18 Letter at 2 (suggesting, in conclusory way, that date discrepancy was "pivotal")); rather, it reasonably appears to have been a simple typographical error. *See Crews v. Cty. of Nassau*, 996 F. Supp. 2d 186, 208 (E.D.N.Y. 2014) (rejecting malicious prosecution claim premised entirely upon defendants' listing wrong date on felony complaint in order to assert alibi defense). At bottom, the date discrepancy, beyond being hearsay and likely subject to absolute immunity, has no conceivable bearing on Mr. Brown's deprivation of liberty.

Secondly, that Cardona fabricated E.B.'s statement to the effect that she suffered "substantial pain" is similarly immaterial, and is, in any event, not a fabrication either. Addressing the latter issue first, Plaintiff presents no evidence suggesting the statement was false. Neither

party has submitted testimony from E.B. Ms. Brown is apparently the only individual deposed in this case that observed Cardona's interview with E.B. However, the Court has culled the deposition testimony that has been submitted, and it establishes, at most, that E.B. downplayed the incident as playful to Cardona, but admitted that it happened. Ms. Brown testified that E.B. did not use the precise words "substantial pain" during the conversation she witnessed with Cardona, and that E.B. was not in pain as a result of her father's conduct. M. Grodd-Brown Depo. 55:23-24. However, this is not inconsistent with Cardona's statement that E.B. attested to having been in substantial pain *to him*. For example, Ms. Brown's testimony does not preclude the possibility that E.B. indicated such to Cardona in the apartment (*i.e.*, in a conversation that, as Ms. Brown acknowledged, she may have not witnessed). And Ms. Brown's testimony certainly does not establish that E.B. affirmatively *disclaimed* having been in substantial pain to Cardona, or did not describe any pain she might have felt using other words.[11] As such, Plaintiff has failed to raise an issue of material fact that this information was, in fact, false.

Even were that not the case, it is far from clear that this fabrication resulted in Mr. Brown's deprivation of liberty between his arrest and release on his own recognizance shortly thereafter. *See, e.g., Jovanovic*, 2010 WL 8500283, at *10 (quoting *Zahrey v. Coffey*, 221 F.3d 342, 349 (2d Cir. 2000)) ("The constitutional right in question is 'the right not to be deprived of liberty as a result of the fabrication of evidence by a government officer acting in an investigating capacity . . . provided that the deprivation of liberty . . . can be shown to be the result of [the officer's] fabrication of evidence.'"), *aff'd*, 486 F. App'x 149 (2d Cir. 2012). The "substantial pain"

---

[11] Indeed, it is more than plausible that E.B. conveyed the pain she experienced to Cardona in some other way, but that Cardona used the term "substantial pain" to parrot the terms of the relevant statutes. *See, e.g.*, N.Y. Penal Law § 120.00(1) (defining intentional third-degree assault as, "with the intent to cause physical injury to another person, he causes such injury to such person. . ."); *id.* § 10.00(9) (defining "physical injury" as "impairment of physical condition or substantial pain"); *People v. Henderson*, 708 N.E.2d 165, 166 (N.Y. 1999) (accusatory instrument must reflect how victim suffered "substantial pain" or impairment to satisfy physical injury requirement for assault charge).

allegation related only to the assault charges, and "was not material to any other charge." *Id.* As Plaintiffs offer no reason that, absent that allegation, Mr. Brown would not have been arrested on the other charges, arraigned, and then released on his own recognizance, Plaintiffs cannot demonstrate the materiality of the alleged fabrication, and there is no genuine issue of material fact regarding this element.

For these reasons, Plaintiffs' fair trial claim is dismissed.

## IV.    Fifth Amendment

Mr. Brown contends that Cardona violated his constitutional rights by pressuring him to write a statement describing the offense at issue. Mr. Brown has testified that, despite signing a *Miranda* sheet at the precinct, he felt threatened by Cardona's throwing a piece of paper on the table in the interview room and demanding that he "[w]rite down the statement about what happened[.]" However, as Mr. Brown conceded at deposition, Cardona did nothing else which Brown perceived as threatening, nor did Cardona dictate what Brown was to write in his statement.

Here, it is uncontested that Brown initialed and signed the *Miranda* sheet that Cardona gave to him. However, assuming for the sake of argument that Cardona did not read Plaintiff his *Miranda* rights out loud, "[i]t is well settled that the mere failure to read a suspect his *Miranda* warnings is not a constitutional violation in and of itself, and is therefore not the basis for a Section 1983 claim." *Leogrande v. New York*, No. 08-CV-3088 (JFB)(ARL), 2013 WL 1283392, at *9 (E.D.N.Y. Mar. 29, 2013); *Jocks v. Tavernier*, 316 F.3d 128, 138 (2d Cir. 2003) ("*Miranda* violations, absent coercion, do not rise to the level of constitutional violations actionable under § 1983. The appropriate remedy for violations of Miranda rights is exclusion of the evidence at trial." (citation omitted)); *see United States v. Suarez*, No. 06-CR-273 (RPP), 2006 WL 3543616, at *5

n.8 (S.D.N.Y. Dec. 7, 2006) (suggesting that advising defendant of rights both orally and in writing is "not constitutionally necessary" but good police practice).

As such, as Plaintiff's argument implies (Pls' Mem. at 18-19), Plaintiff must demonstrate coercion to make out a claim under section 1983. "A plaintiff alleging coercion must allege more than that police told her she was a suspect, suggested that it would be to her benefit to cooperate, or promised leniency in exchange for cooperation." *Sedunova v. City of New York*, 652 F. App'x 29, 31 (2d Cir. 2016) (citing *United States v. Ruggles*, 70 F.3d 262, 265 (2d Cir. 1995)). Rather, "[a] plaintiff must point to circumstances indicating that she *could not* make a knowing and voluntary decision." *Id.* (emphasis added) (citing *United States v. Taylor*, 745 F.3d 15, 24 (2d Cir. 2014)).

The record is, however, devoid of such evidence. Cardona's throwing paper down on the table and demanding that Brown write a statement was, at most, aggressive, but not coercive in the constitutional sense. For example, in *Jocks*, the sole case that Plaintiff cites on this point, the Second Circuit rejected a claim that an officer "making provocative statements in front of a suspect who has insisted on having his lawyer present and asking if the statements are accurate" was sufficiently coercive, deeming it a mere "run-of-the-mill *Miranda* violation." 316 F.3d at 138. Also illustrative are the facts in *Sedunova*, where the Court of Appeals affirmed the dismissal of a coerced confession claim despite two officers' trying to convince Plaintiff that it would be "good for her" to confess to murder and claim self-defense, and told Plaintiff that she would be free to leave if she confessed. 652 F. App'x at 31. Here, none of these insufficiently coercive tactics, nor any more egregious methods, were present. Even considering Cardona's alleged threat to *arrest* Brown in front of his daughter together with the above-discussed evidence, Plaintiff falls far short

of demonstrating "circumstances indicating that [he] could not make a knowing and voluntary decision." *Id.*

For these reasons, summary judgment is warranted on Plaintiffs' Fifth Amendment claim.

## V. Substantive Due Process

Plaintiffs claim that their substantive due process rights were violated because Mr. Brown was kept away from his family as a result of Cardona's having "fabricated, falsified and created false facts against Mr. Brown." Pls' Mem. at 16-17.

Families have a "substantive right under the Due Process Clause 'to remain together without the coercive interference of the awesome power of the state.'" *Tenenbaum v. Williams*, 193 F.3d 581, 600 (2d Cir. 1999) (citation omitted). Substantive due-process rights "guard against the government's 'exercise of power without any reasonable justification in the service of a legitimate governmental objective.'" *Id.* (quoting *Cty. of Sacramento v. Lewis*, 523 U.S. 833, 846 (1998)). Thus, "only" conduct that is "so shocking, arbitrary, and egregious" satisfies this standard. *Id.* (quoting *Cty. of Sacramento*, 523 U.S. at 846).

In addition, "[w]here a particular Amendment "provides an explicit textual source of constitutional protection" against a particular sort of government behavior, "that Amendment, not the more generalized notion of 'substantive due process,' must be the guide for analyzing these claims." *Id.* at 599 (quoting *Albright v. Oliver*, 510 U.S. 266, 273 (1994) (plurality opinion of Rehnquist, C.J.)).

Here, as Defendants correctly argue, and Plaintiffs make no effort to refute, Plaintiffs' claim of having been arrested and kept from his family as a result of Cardona's alleged fabrication of charges is properly analyzed under the Fourth Amendment, rather than substantive due process. *Id.* at 600 (quoting *Cty. of Sacramento*, 523 U.S. at 843) ("Substantive due process analysis is

therefore inappropriate in this case . . . if [the] claim is 'covered by' the Fourth Amendment."). As discussed at length above, Plaintiffs' Fourth Amendment claim lacks merit.

In any event, Plaintiffs cannot establish that the conduct at issue here was so arbitrary and conscience-shocking that it violated their substantive due process rights. At Mr. Brown's arraignment, at his counsel's request, Judge Statsinger granted him the ability to modify the temporary order of protection in family court should he have desired to do so. It is unclear whether Brown availed himself of that opportunity. Moreover, it is undisputed that Judge Statsinger offered Brown a shorter adjournment date, which his attorney declined. In light of the allegations in this case, it cannot be said that the protective order in this case "was without any reasonable justification in the service of a legitimate governmental objective." *Tenenbaum*, 193 F.3d at 600.

For these reasons, Plaintiffs' substantive due process claim lacks merit.

## VI.    First Amendment Retaliation

Although Plaintiff has presented no argument with respect to this claim, it appears that Plaintiff is attempting to raise a claim for retaliatory arrest (as opposed to retaliatory prosecution). *See* Second Amended Complaint ¶¶ 72-78 (complaining of Cardona's retaliating against plaintiffs "by dragging plaintiffs to the precinct and against their will").

"To prevail on this claim, plaintiff must demonstrate that (1) she has an interest protected by the First Amendment; (2) defendants' actions were motivated or substantially caused by his exercise of that right; and (3) defendants' actions effectively chilled the exercise of her First Amendment right." *Holley v. Cty. of Orange, NY*, 625 F. Supp. 2d 131, 141 (S.D.N.Y. 2009) (citing *Curley v. Village of Suffern*, 268 F.3d 65, 73 (2d Cir. 2001)). It is well-settled law within this Circuit that probable cause defeats a retaliatory arrest claim. *See Van Dunk v. Brower*, No. 11-CV-4564 (ER), 2013 WL 5970172, at *11 n.11 (S.D.N.Y. Nov. 7, 2013) (surveying Second

Circuit case law providing that probable cause defeats retaliatory arrest claim). *But see Bartlett v. Nieves*, 712 F. App'x 613, 616 (9th Cir. 2017) (holding that "a plaintiff can make a retaliatory arrest claim even if the arresting officers had probable cause"), *cert. granted*, No. 17-1174, 2018 WL 1023097 (U.S. June 28, 2018).

For the reasons discussed elsewhere in this opinion, Cardona had probable cause to arrest Plaintiff, thus foreclosing a retaliatory arrest claim. Plaintiffs do not contest the binding nature of the case law on this point (despite being given an opportunity to file a sur-reply addressing this argument raised for the first instance in Defendants' reply brief).[12] As such, Plaintiffs' First Amendment retaliation claim is dismissed.

## VII.  State Law Claims

Having disposed of Plaintiffs' federal claims, the Court declines to exercise supplemental jurisdiction over Plaintiffs' remaining claim grounded in state law.[13] *See Valencia ex rel. Franco v. Lee*, 316 F.3d 299, 305 (2d Cir. 2003) (where, as here, all federal claims have been eliminated, concerns of "judicial economy, convenience, fairness and comity point towards declining to exercise jurisdiction over the remaining state-law claims").

---

[12] Even were the law in this Circuit that probable cause did not defeat such a claim, Plaintiff's claim would nonetheless fail as it is far from clear that Mr. Brown's arrest was motivated by First Amendment-protected activity.

[13] Technically, Plaintiffs' negligent training and respondeat superior claims are the only state law claims that have not already been discussed or abandoned by Plaintiffs. However, as Plaintiffs acknowledge (Pls' Mem. at 11), their respondeat superior claim is contingent upon their prevailing on another state law claim. *See, e.g., Shapiro v. Kronfeld*, No. 00-CV-6286 (RWS), 2004 WL 2698889, at *24 (S.D.N.Y. Nov. 24, 2004) (citing *Wende C. v. United Methodist Church*, 776 N.Y.S.2d 390, 395 (N.Y. App. Div. 4th Dep't 2004)) (holding that there can be "no imposition of vicarious liability in the absence of underlying liability").

## CONCLUSION

For the aforementioned reasons, Defendants' Motion for Summary Judgment is

**GRANTED.** Accordingly, the Clerk of Court is respectfully directed to terminate all pending

motions and close this case.

**SO ORDERED.**

Dated: **August 10, 2018**
　　　　**New York, New York**

　　　　　　　　　　　　　　　　　　　　_____
　　　　　　　　　　　　　　　　　　　　　　**ANDREW L. CARTER, JR.**
　　　　　　　　　　　　　　　　　　　　　　**United States District Judge**